IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALKALI SCIENTIFIC, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-2827 |
| MIN QI WANG, et al., | * | |
| Defendants. | * | |

\*\*\*

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Mitch Wang, EHDS International, LLC, and EHDSTech, Inc.'s (collectively, "EHDS Defendants") Partial Motion to Dismiss Amended Complaint (the "EHDS Motion") (ECF No. 16) and Defendants Keith Xu a/k/a Ke E. Xu a/k/a Xu Ke ("Xu") and Ax Capital, Inc.'s (collectively, "Ax Defendants") Motion to Dismiss First Amended Complaint (the "Ax Motion") (ECF No. 28). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant the Motions.

## I. BACKGROUND[1]

### A. **Factual Background**

Plaintiff Alkali Scientific, Inc. ("Alkali") is an Iowa corporation based in Florida that supplies medical devices and personal protective equipment ("PPE") to hospitals, healthcare providers, and government customers throughout the United States. (Am. Compl. ¶ 9, ECF No. 14). On December 1, 2020, King County, Washington awarded Alkali a contract to supply "500,000 Health Care Particulate Respirator and Surgical Masks" for $2,449,975. (Id. ¶¶ 25–26). Alkali alleges that the individual Defendants, Min Qi Wang and Xu, as well as their related companies, Defendants EHDS International, LLC ("EHDS Int'l"), EHDSTech, Inc. ("EHDSTech"), and Ax Capital, Inc. ("Ax"),[2] sold counterfeit 3M N95 masks to Alkali in large quantities. (Id. ¶ 2).

After Alkali was awarded the King County contract, it contacted Wang about procuring N95 masks. (Id. ¶ 26). "Wang informed Alkali that his company was an authorized 3M dealer."[3] (Id.). Alkali then made three purchases of masks from

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 14) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] EHDS Int'l is a Maryland limited liability company based in Clarksville, Maryland, EHDSTech, Inc. is a Maryland corporation based in Rockville, Maryland, and Ax is a Delaware Corporation based in New York. (Am. Compl. ¶¶ 11–13).

[3] It is not clear whether "company" here refers to EHDS Int'l or EHDSTech. As Alkali does not clearly distinguish the two entities, the Court will refer to them collectively as "EHDS." The Court also notes that Wang is sometimes referred to interchangeably with EHDS. (See Am. Compl. ¶ 40). When possible, the Court will treat Wang as distinct from EHDS.

Defendants:[4] (1) 12,000 masks for $39,200 on December 30, 2020; (2) 260,000 masks for $858,000 on January 6, 2021; and (3) 165,200 masks for $536,900 on January 24, 2021. (Id. ¶ 27). Throughout December and January, Wang provided Alkali with assurances in text messages and emails that the N95 masks were manufactured by 3M. (Id. ¶ 35). For example, Wang texted an Alkali manager pictures of the masks' packaging with the 3M label, explaining "3M 1860 N95 arrived this afternoon. See the packages and specs." (Id. ¶¶ 36–37). Alkali paid EHDS for the first shipment of masks, which were sent directly from Wang to King County. (Id. ¶¶ 39–40).[5]

At the time, Alkali was unaware that EHDS had obtained the masks from Defendants Ax, a corporation that imports and distributes PPE, and Xu, a "manager and/or owner" of Ax. (Id. ¶ 13–14, 41). But Wang later assured Alkali that he, EHDS, Xu, and Ax were partners, and Alkali subsequently purchased the second and third shipments from Ax instead of EHDS. (Id. ¶¶ 50–52). On January 5, 2021, Alkali visited the Ax warehouse in Brooklyn and inspected the next shipment of masks. (Id. ¶ 56). Alkali paid Ax for the masks and shipped them to King County. (Id. ¶¶ 61, 64). Alkali paid Ax for the third shipment of masks on January 25, 2021, again shipping the masks to King County. (Id. ¶¶ 67, 70). On or about February 8, 2021, King County informed Alkali that the masks the county had received were counterfeit. (Id. ¶ 75). U.S. Customs and Border Patrol seized

---

[4] The Court notes that Alkali occasionally refers to "Defendants" generally. It is unclear which specific entities Alkali claims sold it the masks. (See generally Am. Compl. ¶ 27 ("Alkali made three purchases of masks from Defendants.")).

[5] Again, Alkali is inconsistent in naming the recipients of the three payments. It states the first payment was sent to Wang, (id. ¶ 39), but later states that only EHDSTech and Ax received payments for the masks, (id. ¶ 172).

the masks on February 11, 2021. (Id. ¶ 76). Alkali revoked its acceptance of the masks during a phone call with Wang on February 20, 2021, (id. ¶ 77), and again in writing to Wang on August 27, 2021 and to Ax and Xu on September 15, 2021, (id. ¶ 80). In total, Alkali paid EHDS and Ax $1,434,500 for the counterfeit masks.[6] (Id. ¶¶ 7, 95, 102).

**B.  Procedural History**

On November 3, 2021, Alkali filed suit against Wang, EHDSTech, and EHDS Int'l. (ECF No. 1). Alkali filed an Amended Complaint naming Ax and Xu as Defendants on December 3, 2021. (ECF No. 14). In its Amended Complaint, Alkali alleges seven counts against all Defendants: breach of contract (Count I); fraudulent inducement (Count II); unjust enrichment (Count III); conspiracy (Count IV); unfair trade practices pursuant to Md. Ann. Code, Com. Law § 13-101 et seq. (Count V); breach of implied warranty of merchantability (Count VI); and trafficking in counterfeit goods and wire fraud under the Racketeer Influenced and Corrupt Organizations ("RICO") Act (Count VII). (Am. Compl. ¶¶ 100–75). Alkali seeks compensatory damages in the amount of $1,434,500 plus lost profits, incidental and consequential damages, punitive damages, attorney's fees and costs, and pre-judgment interest. (Id. ¶ 108). Alkali seeks treble damages in the amount of $4,303,500 and three times its lost profits for the RICO count. (Id. ¶ 175).

On December 22, 2021, EHDS Defendants filed a Partial Motion to Dismiss the Amended Complaint (the "EHDS Motion"). (ECF No. 16). On January 5, 2022, Alkali

---

[6] Alkali also states that it "issued a purchase order to AX for 425,200 masks for $1,394,900." (Am. Compl. ¶ 69). Neither of these amounts are included anywhere else in the Amended Complaint.

filed its Opposition (ECF No. 23), and EHDS Defendants filed a Reply on February 9, 2022 (ECF No. 26).

On February 14, 2022, Ax Defendants filed a Motion to Dismiss First Amended Complaint (ECF No. 28). Alkali filed an Opposition on March 21, 2022 (ECF No. 31), and Ax Defendants filed a Reply on April 25, 2022 (ECF No. 32).

## II.  DISCUSSION

### A.  Standards of Review

#### 1.  Rule 12(b)(2)

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993)). If the existence of jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits, and discovery materials, "the plaintiff need only make a prima facie showing of personal jurisdiction." Carefirst, 334 F.3d at 396; see also Mylan Labs., 2 F.3d at 60; Combs, 886 F.2d at 676. In determining whether the plaintiff has proven a prima facie case of personal jurisdiction, the court "must draw all reasonable inferences

5

arising from the proof, and resolve all factual disputes, in the plaintiff's favor." Mylan Labs., 2 F.3d at 60; Carefirst, 334 F.3d at 396. As set forth above, in resolving motions brought under Federal Rule of Civil Procedure 12(b)(2), the court may consider evidence outside the pleadings. Structural Pres. Sys., LLC v. Andrews, 931 F.Supp.2d 667, 671 (D.Md. 2013).

Personal jurisdiction may be established through either of two avenues. If the defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." Carefirst, 334 F.3d at 397. In determining whether specific jurisdiction exists, a court must consider: (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." Id.; see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711–12 (4th Cir. 2002); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). If, however, the defendant's contacts with the state are not also the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 318 (1945). To establish general jurisdiction, the defendant's "affiliations with the State [must be] so continuous and systematic as to render it essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Absent a federal statute specifying different grounds for personal jurisdiction, federal courts may exercise jurisdiction in the manner provided by state law. Fed.R.Civ.P. 4(k)(1)(A). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Carefirst, 334 F.3d at 396. With certain exceptions not at issue here, Maryland's long-arm statute provides for personal jurisdiction over a nonresident defendant to the extent the defendant:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). "[T]o the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." Dring v. Sullivan, 423 F.Supp.2d 540, 545 (D.Md.

2006) (quoting Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals, 887 F.Supp. 116, 118–19 n.2 (D.Md. 1995)).

### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir.

2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### 3. Rule 9(b)

Alkali's allegations of fraud implicate the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).[3] Cozzarelli v. Inspire Pharm. Inc., 549 F.3d 618, 629 (4th Cir. 2008). The rule states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). Under the rule, a plaintiff alleging claims that sound in fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010) (quoting U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). In other words, "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011) (quoting Summerhill v. Terminix, Inc., 637 F.3d 877, 880 (8th Cir. 2011)).

As the Fourth Circuit has explained, Federal Rule of Civil Procedure 9(b) serves several salutary purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are

9

> learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc., 755 F.Supp. 1055, 1056–57 (S.D.Ga. 1990)). By its terms, however, Rule 9(b) permits a general averment of aspects of fraud that relate to a defendant's state of mind. It states, in part: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). Moreover, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784.

**B.    Analysis**

    **1.    Jurisdictional Challenge by Ax Defendants**

The Court will first analyze Ax Defendants' challenges to the Court's personal jurisdiction "because the dismissal of a case on an issue relating to the dispute, such as a failure to state a claim, is improper without resolving threshold issues of jurisdiction, including personal jurisdiction." Hardwire, LLC v. Ebaugh, No. CV JKB-20-0304, 2021 WL 3809078, at *4 (D.Md. Aug. 26, 2021) (quoting Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006)). Ax Defendants argue that this Court lacks personal jurisdiction under either Maryland's long-arm statute or the jurisdictional provisions of RICO. The Court will address each in turn.

### a. Maryland's Long-Arm Statute

Alkali contends that this Court has personal jurisdiction over Ax Defendants because "the masks sold to it in Maryland were imported by Ax Defendants and at least the first lot was provided to Alkali in Baltimore." (Pl.'s Opp'n Mot. Dismiss Defs. ["Opp'n Ax Mot."] at 5, ECF No. 31). That does not appear to be so. First, Alkali does not plead that Ax Defendants were responsible for shipping any masks to Baltimore in its Amended Complaint. (Mem. Supp. Defs.' Mot. Dismiss ["Ax Mot."] at 7, ECF No. 28-1). Indeed, Alkali alleges only that, "[u]pon information and belief, some of the masks were shipped from that warehouse to WANG's warehouse in Baltimore, Maryland." (Am. Compl. ¶ 34 (emphasis added)). Alkali's sly use of the passive voice in its drafting of the Amended Complaint leaves out the existence of any specific actor responsible for the Baltimore shipment, let alone Ax Defendants. (See id.). This is insufficient to demonstrate personal jurisdiction. See Cloninger v. Harvey, No. CV 3:20-0170, 2020 WL 2559949, at *4 (S.D.W.Va. May 20, 2020) ("[T]he complaint uses the passive voice to evade specifying the conduct of each defendant. This runs afoul of Federal Rule of Civil Procedure 8(a)(2)'s requirement of a 'short and plain statement of the claim . . . .'" (citation omitted)).

Moreover, Ax Defendants have produced evidence specifically refuting that they ever shipped masks to Baltimore. They attach to their Motion the affidavit of Xu (the "Xu Affidavit"), wherein he avers that "[n]either [he], nor Ax Capital, shipped any goods to Maryland in connection with the December 30, 2020 shipment of masks." (Decl. Xu Supp. Defs.' Mot. Dismiss ["Xu Decl."] ¶ 4, ECF No. 28-3). Aside from a failed procedural

11

argument,[7] Alkali does not address the Xu Affidavit in its Opposition. (See generally Opp'n Ax Mot.). Accordingly, Alkali has failed to show that this Court has jurisdiction on these grounds.

Next, Alkali contends that the Court has jurisdiction under the conspiracy theory of personal jurisdiction. (Opp'n Ax Mot. at 5). Maryland's long-arm statute "provides jurisdiction over someone who performs [] acts directly or through an agent." Hardwire, 2021 WL 3809078, at *8. In Maryland:

> The basic premise of the conspiracy theory of personal jurisdiction is that certain acts of one co-conspirator that are done in furtherance of a conspiracy may be considered to be the acts of another co-conspirator for purposes of determining whether a forum state may exercise personal jurisdiction over the other co-conspirator.

Id. (quoting Mackey v. Compass Mktg., Inc., 892 A.2d 479, 484 (Md. 2006)). In order to establish personal jurisdiction under the conspiracy theory, Alkali must make a threshold showing that:

> (1) two or more individuals conspire to do something
> (2) that they could reasonably expect to lead to consequences in a particular forum, [then]
> (3) one co-conspirator commits [an] overt act[] in furtherance of the conspiracy, and

---

[7] In a footnote, Alkali appears to argue that the Xu Affidavit is improper because it was unsigned. (Opp'n Ax Mot. at 2 n.2. ("Ax Defendants also submitted an unsigned declaration (Dkt. No. 28-3) in support of their Motion.")). To the extent that Alkali contends that the Xu Affidavit is improperly before the Court, Alkali is wrong. As Ax Defendants note, the Xu Affidavit was digitally signed in accordance with this Court's policy regarding non-attorney signature formats. (See Ax Defs.' Reply Mem. Supp. Mot. Dismiss ["Ax Reply"] at 2 n.2 (citing Non-Attorney Signature Formats, U.S. District Court for the District of Maryland, https://www.mdd.uscourts.gov/content/non-attorney-signature-formats)).

> (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state.

Id. at *9 (quoting Mackey, 892 A.2d at 486).

Ax Defendants argue that Alkali relies on conclusory and speculative contentions that Wang and Xu were co-conspirators and that Wang acted as Xu's agent. (Ax Reply at 2). The Court agrees. Alkali does not offer any substantive arguments to support its contention that Wang's actions are attributable to Ax Defendants. Rather, Alkali simply sets forth the test for conspiracy theory personal jurisdiction from Mackey, states that "those circumstances . . . easily are met here," and cites portions of the Amended Complaint. (Opp'n Ax Mot. at 6 (citing Am. Compl. ¶¶ 2–3, 28–29, 35–74, 90)). This is not enough to make a prima facie case of conspiracy theory personal jurisdiction. See Lolvar v. de Santibanes, 430 F.3d 221, 230 (4th Cir. 2005) (stating that a plaintiff must allege specific facts connecting the defendant with the forum and that "the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction" (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378–79 (D.C.Cir. 1988))). Accordingly, Alkali has failed to show that the Court has personal jurisdiction under Maryland's long-arm statute or under the conspiracy theory and the Amended Complaint is subject to dismissal under Rule 12(b)(2).

Finally, in its Opposition, Alkali states that if the Court finds that the pleadings are insufficient to establish personal jurisdiction, it requests that the Court grant it permission to conduct limited discovery of Defendants to uncover facts sufficient to establish personal jurisdiction. The Court declines. Indeed, "[w]hen a plaintiff offers only speculation or

conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." See CareFirst, 334 F.3d at 402 (citing cases). As Alkali has done nothing more than state conclusory allegations not contained within the Amended Complaint, even limited discovery is unwarranted.

### b. Personal Jurisdiction under RICO

Next, Alkali contends that it has nationwide jurisdiction under RICO. As the Court will explain below, Alkali's RICO claims fail under Rule 12(b)(6), and thus Alkali cannot rely on RICO to confer jurisdiction over the matter. Accordingly, for the reasons explained infra, the Court will dismiss the Amended Complaint as to the Ax Defendants.

## 2. Failure to State a Claim

### a. RICO

Alkali raises a claim for trafficking in counterfeit goods and wire fraud under the RICO Act against all Defendants. (Count VII). Both Ax Defendants and EHDS Defendants argue that Alkali has failed to plead allegations supporting the existence of a pattern of racketeering activity or a RICO enterprise, and thus the Count VII should be dismissed under Rule 12(b)(6). (Ax Mot. at 8–18; EHDS Defs.' Mem. Supp. Partial Mot. Dismiss Am. Compl. ["EHDS Mot."] at 5–8, ECF No. 16-1). At bottom, the Court agrees and will dismiss the Amended Complaint in its entirety as to Ax Defendants and will dismiss Count VII as to EHDS Defendants.

The RICO statute prohibits the conduct of an "enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO establishes criminal penalties and also "a private civil right of action to '[a]ny person injured in his business or property by

reason of a violation of the RICO provisions.'" Hardwire, 2021 WL 3809078, at *5 (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997)). "A civil RICO action 'is a unique cause of action that is concerned with eradicating organized, longterm, habitual criminal activity.'" Ekstrom v. Cong. Bank, No. ELH-20-1501, 2020 WL 6565251, at *16 (D.Md. Nov. 9, 2020) (quoting U.S. Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010)). To properly plead a civil RICO claim, Plaintiffs must allege "1) conduct [causing injury to business or property] 2) of an enterprise 3) through a pattern 4) of racketeering activity." Id. at *17 (alteration in original) (citing Morley v. Cohen, 888 F.2d 1006, 1009 (4th Cir. 1989)). As a fraud claim is asserted as the predicate act for this civil RICO violation, Rule 9(b)'s particularity requirement applies. Id. at *19.

In evaluating the viability of a RICO claim, the United States Court of Appeals for the Fourth Circuit instructs courts to differentiate between "garden-variety fraud claims," which do not amount to a RICO violation, and "cases involving a more serious scope of activity." See Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000). Courts have "limit[ed] [RICO's] severe penalties to offenders engaged in ongoing criminal activity, rather than isolated wrongdoers." Ekstrom, 2020 WL 6565251, at *17 (quoting Friedler v. Cole, No. CCB-04-1983, 2005 WL 465089, at *7 (D.Md. Feb. 28, 2005)). RICO "is reserved for conduct whose scope and persistence pose a special threat to social well-being." Id. (quoting Biggs v. Eaglewood Mortg., LLC, 582 F.Supp.2d 707, 714 (D.Md. 2008)). Thus, the Court "will not lightly permit ordinary business contract or fraud disputes

15

to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988).

Defendants argue that Alkali has not pleaded a pattern of racketeering activity. (Ax Mot. at 10–15; EHDS Mot. at 7–8). A "pattern of racketeering activity" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). At least two predicate acts are required, but two acts alone still may not necessarily establish a pattern. GE Inv. Priv. Placement Partners v. Parker, 247 F.3d 543, 549 (4th Cir. 2001). In order to show a pattern of racketeering activity, the plaintiff must demonstrate "that the predicate acts are related and that they 'amount to or pose a threat of continued criminal activity.'" Id. (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)).

The parties dispute, among other things, whether Alkali has shown continuity. "Continuity refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" Id. (quoting H.J. Inc., 492 U.S. at 241). "To satisfy the continuity element, a plaintiff must show that 'the predicates themselves amount to, or . . . otherwise constitute a threat of, continuing racketeering activity.'" Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989) (quoting H.J. Inc., 492 U.S. at 241). Open-ended continuity may be shown where "the 'related predicates themselves involve a distinct threat of long-term racketeering activity,' or where the [] acts 'are part of an ongoing entity's regular way of doing business.'" G.E. Inv., 247 F.3d at 549 (quoting H.J. Inc., 492 U.S. at 242–43). A plaintiff may show closed-ended continuity by establishing a "series of related predicates over a substantial period of time." Id. (quoting H.J. Inc., 492 U.S. at 242). "Predicate acts extending over a few weeks or months and

threatening no future criminal conduct do not satisfy this requirement." Id.; accord Menasco, 886 F.2d at 683. The Fourth Circuit has explained that it is "cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." Id. (quoting Al-Abood, 217 F.3d at 238). The test is commonsensical rather than formulaic. Menasco, 886 F.2d at 684.

After considering the allegations in Alkali's Amended Complaint, the Court finds that it has failed to satisfy the continuity prong of RICO's pattern requirement. Even taking Alkali's allegations as true, as we must, Alkali asserts that the alleged predicate acts occurred over only a single one-month period: from December 2020 to January 2021. (Am. Compl. ¶¶ 25, 69). That is extremely narrow in duration and far less than what the Fourth Circuit has considered sufficient to establish continuity. Indeed, the Fourth Circuit has flatly rejected plaintiffs' RICO claims where the predicate acts occurred over a one- or two-year period. See GE Inv., 247 F.3d at 550 (rejecting RICO claim on continuity grounds where predicate acts occurred over "only about two years"); Menasco, 886 F.2d at 684 (failing to find continuity where predicate acts occurred over a one-year period). As Alkali has alleged that the scheme only took place over the course of a month, the purported predicate acts do not constitute the type of "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being" as contemplated in this Circuit, and its RICO claim must fail. See Menasco, 886 F.2d at 684 (emphasis added).

As Alkali's RICO claims are subject to dismissal for failure to plead a pattern of racketeering activity, the Court need not assess whether it has established an enterprise.

Alkali has failed to state a claim for RICO, and thus this Court does not have jurisdiction over its remaining claims regarding Ax Defendants. See supra Section II.B.1. Accordingly, the Court will dismiss the Amended Complaint in its entirety as to Ax Defendants. Additionally, the Court will dismiss Count VII as to EHDS Defendants.

### b. Maryland Consumer Protection Act

Finally, EHDS Defendants argue that Alkali is not a consumer as defined by the Maryland Consumer Protection Act ("MCPA"), and thus it lacks standing to bring its unfair trade practices claim (Count V). (EHDS Mot. at 6); see Md. Code Ann., Com. Law ("CL") § 13-101 et seq. The Court agrees and will dismiss the claim.

"The purpose of the MCPA is to 'set certain minimum statewide standards for the protection of consumers across the State.'" Assanah-Carroll v. Law Off. of Edward J. Maher, P.C., Misc. No. 11, Sept. Term, 2021, 2022 WL 2977057, at *5 (July 28, 2022) (quoting CL § 13-102(b)(1)). The MCPA allows a plaintiff to "bring an action to recover for injury or loss sustained by [her] as the result of a practice prohibited by this title." CL § 13-408(a). A "consumer" is defined as "an actual or prospective purchaser, lessee, or recipient of consumer goods, consumer services, consumer realty, or consumer credit." CL § 13-101(c)(1). "The Maryland Court of Appeals has clarified the statutory definitions, holding that the CPA applies only where the purchaser intends to use the goods for 'personal, household, family, or agricultural purposes.'" D&G Flooring, LLC v. Home Depot U.S.A., Inc., 346 F.Supp.2d 818, 823 (D.Md. 2004) (quoting Morris v. Osmose Wood Preserving, 667 A.2d 624, 635 (Md. 1995)).

In its Amended Complaint, Alkali states that it is "in the business. . . of buying and selling medical devices and personal protective equipment to hospitals, other healthcare providers and government customers around the United States." (Am. Compl. ¶ 9). Clearly, then, Alkali is not a purchaser that intended to use the 3M masks for "personal, household, family, or agricultural purposes," and Alkali lacks standing to raise its MCPA claim. See D&G Flooring, LLC, 346 F.Supp.2d at 823 (rejecting MCPA claim made by flooring company as company did not purchase goods for its own purposes); Fare Deals Ltd. v. World Choice Travel.Com, Inc., 180 F.Supp.2d 678, 692 (D.Md. 2001) ("Quite simply, Fare Deals, a corporate commercial entity, is not a 'consumer' under the Maryland Consumer Protection Act. Therefore, the CPA affords it no protection and no remedy."). Accordingly, the Court will dismiss Count V against the EHDS Defendants.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Ax Defendants' Motion to Dismiss First Amended Complaint (ECF No. 28) and EHDS Defendants' Partial Motion to Dismiss Amended Complaint (ECF No. 16). A separate Order follows.

Entered this 27th day of September, 2022.

                                                              /s/
                                      George L. Russell, III
                                      United States District Judge